E-FILED
Wednesday, 29 March, 2023  02:42:51 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| **CONRAD RACZKOWSKI, individually** | ) | |
| **and on behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-CV-2061** |
| | ) | |
| **CONAGRA BRANDS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## O R D E R

On March 22, 2022, Plaintiff, Conrad Raczkowski, individually and on behalf of all others similarly situated, filed the instant suit against Defendant, Conagra Brands, Inc.  Plaintiff subsequently filed a First Amended Class Action Complaint (#8) ("the Complaint") on June 28, 2022.

Defendant filed a Motion to Dismiss (#16) on August 29, 2022, to which Plaintiff filed a Memorandum in Opposition (#18) on September 12, 2022.  With leave of court, Defendant also filed a Reply (#20) on October 12, 2022, followed by a Notice of Supplemental Authority (#22) on November 30, 2022.

For the following reasons, Defendant's Motion to Dismiss (#16) is GRANTED in part and DENIED in part, and Plaintiff's Complaint (#8) is DISMISSED, without prejudice.

# I.  BACKGROUND

The following background facts are taken from the allegations in the Complaint. At this stage of the proceedings, the court must accept as true all material allegations in the Complaint, drawing all reasonable inferences therefrom in Plaintiff's favor.  See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

Defendant manufactures, labels, markets, and sells a vegetable oil spread ("the spread") under its Earth Balance brand, which is promoted as "Made with Olive Oil." Specifically, the front of the spread's container contains the following representations: "Soy Free," "Non-GMO," "Vegan," "Made with Olive Oil," "Buttery Spread," and "78% Vegetable Oils."

Vegetable oil spreads are non-dairy alternatives to butter and contain less than 80% fat (as compared to margarine, which is required to have 80% or more fat). Vegetable oil traditionally refers to oils such as corn oil, canola oil, cottonseed oil, palm oil, safflower oil, sesame oil, soybean oil, and sunflower oil.

Annual consumption of margarine and vegetable oil spreads recently reached its lowest level since the 1940s, because consumers prefer the "natural appeal" of butter, which is made with simple natural ingredients (like cream and salt), without chemicals and additives, through the simple process of churning cow's milk.  Vegetable oil spreads are considered ultraprocessed foods ("UPF"), frowned upon by nutrition authorities and public health bodies, and are heavily refined in the presence of chemical catalysts, such as nickel and cadmium.  Consumers are also more aware of the healthier

2

profile of butter, which contains heart healthier fats, as compared to vegetable oil spreads, which contain harmful trans fats resulting from hydrogenation and interesterification.

To counter the decline in consumption of vegetable oil spreads, companies are increasingly incorporating alternatives oils like olive oil.  Olive oil is the juice of crushed olives, without additives or harsh processing.  Whereas vegetable oils have no flavor or aroma, olive oil is known for its peppery and grassy taste.  Over the past several decades, olive oil has increased in popularity and its sales exceed all other vegetable oils combined.  The popularity of olive oil has increased, at least in part, due to its association with the "Mediterranean Diet," which scientific studies have shown reduces health risks.  Olive oil has high levels of heart-healthy fats, such as polyunsaturated and monounsaturated fat, which help control cholesterol; contains antioxidants, which promote immunity and fight free radical damage to slow down the aging process; promotes brain function, bone strength, and balanced blood sugar; and contains oleic acid and phenols that are linked to prevention of skin, breast, and colon cancer.

Plaintiff purchased the spread in question on one or more occasions between December 31, 2021, and January 31, 2022, in Bradley, Illinois.  Based upon the representations on the front of its container, Plaintiff believed and expected that the spread was made with "a non-de minimis and/or predominant amount of olive oil," rather than primarily with palm and canola oil.  Plaintiff likewise alleges that other "consumers expect it contains a significant, non-de minimis amount of olive oil, in relative and absolute amounts to all oil used."

3

However, "the ingredient list reveals a smaller than expected amount of olive oil" in the spread, which Plaintiff alleges constitutes a "de minimis amount of olive oil." The ingredients are listed in order of predominance by weight, beginning with "Vegetable Oil Blend (Palm Fruit, Canola, Safflower, Extra Virgin Olive, and Flax Oils)." Therefore, the spread contains more palm fruit, canola, and safflower oil than it does extra virgin olive oil.

Plaintiff alleges the amount of olive oil is misleading in light of the front label representation that the spread is "Made With Olive Oil;" that the amount of olive oil is insufficient to confer any of the health benefits or taste associated with olive oil; and that the other oils in the vegetable oil blend lack the health and nutritional attributes of olive oil.

The spread is sold at a "premium price" of no less than $3.49 per 13 ounces (excluding sales tax). Had Plaintiff and the proposed class members known that the spread contained only a de minimis amount of olive oil, they would not have bought the spread or would have paid less for it. Defendant sold more of the spread, at higher prices, than it would have because of the labeling that misled consumers about the amount of olive oil in the spread.

## II. ANALYSIS

The Complaint contains the following claims: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1, *et seq.*; (2) violation of other state consumer fraud statutes, on behalf of other consumers in the proposed class residing in Arkansas, Iowa, Utah, West Virginia,

4

Idaho, Alaska, and Montana; (3) breach of express warranty, implied warranty of

merchantability and/or fitness for a particular purpose, and the Magnuson-Moss

Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; (4) common law negligent

misrepresentation; (5) common law fraud; and (6) common law unjust enrichment.

Defendant filed its Motion to Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6). Defendant argues that Plaintiff lacks standing to

pursue injunctive relief and to pursue claims based on state consumer protection

statutes other than the ICFA. Defendant further argues that Plaintiff cannot identify

any false or misleading representations under the ICFA and that he otherwise fails to

state a claim for the remaining claims.

A.  Dismissal Under 12(b)(1)

Defendant has brought its Motion to Dismiss in part under Federal Rule of Civil

Procedure 12(b)(1), alleging lack of subject matter jurisdiction. "To reach the merits of a

case, an Article III court must have jurisdiction. One essential aspect of this

requirement is that any person invoking the power of a federal court must demonstrate

standing to do so." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019)

(internal quotations omitted). Therefore, the court first considers whether Plaintiff has

Article III standing before turning to the merits.

At the pleading stage, Plaintiff must allege facts sufficient to establish each of

three elements: (1) that he suffered an "injury in fact"; (2) that the injury is "fairly

traceable to the challenged action of the defendant"; and (3) that the injury is likely to be

redressed by a decision in Plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

5

560 (1992) (cleaned up).  And "a plaintiff must have standing for each form of relief sought."  *Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 813 (7th Cir. 2018).

       1.  *Injunctive Relief*

In the Complaint, Plaintiff requests preliminary and permanent injunctive relief, in addition to monetary damages, costs, and expenses.  Injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Defendant argues that Plaintiff lacks standing to seek injunctive relief in this case, citing *Camasta v. Joseph A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014).  In *Camasta*, the Seventh Circuit held the plaintiff had failed to sufficiently allege that the defendant's alleged deceptive trade practices would likely cause him harm in the future because his complaint made clear that he was now "aware of [the defendant's] sales practices."

The Northern District of Illinois recently relied on this reasoning when denying standing for a plaintiff to pursue prospective injunctive relief pursuant to an ICFA claim regarding the labeling of a vegetable oil spread:

> The labeling of [defendant's] product does not present a risk of future injury to [plaintiff].  She now knows that the product does not meet her previous expectations, so she faces no risk of purchasing the product due to any misrepresentation on its label.  She therefore has no standing to seek prospective relief with respect to the product.

*Ledezma v. Upfield US Inc.*, 2022 WL 16553039, at *3 (N.D. Ill. Oct. 31, 2022).

6

But *Camasta*'s holding that the plaintiff lacked standing to pursue injunctive relief relied not only on the plaintiff's alleged awareness of the defendant's sales practices, but also on the fact that any future injury was alleged in a general, "speculative" manner based "solely on the conjecture that because [defendant] harmed [plaintiff] in the past, they are likely to harm him again in the future." *Camasta*, 761 F.3d at 740-41; see also *Le v. Kohls Department Stores, Inc.*, 160 F.Supp.3d 1096, 1111 (E.D. Wis. 2016) ("It is true … that the [*Camasta*] court pointed out that the plaintiff was 'now aware of the defendant's sales practices,' and as such he was not 'likely to be harmed by the practices in the future.'  However, the court's observation reflected the unremarkable conclusion that 'without more than the speculative claim that a plaintiff will again be harmed by the defendant, a plaintiff is not entitled to injunctive relief.'" (cleaned up)).

In *Le*, the Eastern District of Wisconsin held that (1) "[i]nterpreting the *Camasta* court's dicta to instead announce a broad rule that strips a prospective plaintiff of standing to seek an injunction solely because they are aware of a past wrong overreads that court's language and leads to anomalous results" and (2) *Camasta* was factually distinguishable because it did not contain an allegation that the allegedly deceptive sales practices actually continued (only that there was a "substantial danger" that the practices "would continue").  *Le*, 160 F.Supp.3d at 1111.

The court finds *Le*'s interpretation of the scope of *Camasta*'s holding persuasive. In the instant case, paragraph 76 of the Complaint clearly alleges that "Plaintiff seeks class-wide injunctive relief because the practices continue."  And, as a matter of policy,

7

it would lead to an anomalous result if no class action could ever seek as a remedy

prospective injunctive relief against deceptive or unfair consumer practices simply

because the named plaintiff was, almost certainly, *necessarily* aware of the practices at

the time of filing and therefore was *personally* unlikely to be deceived (i.e., injured) by

them again in the future, notwithstanding the risk to other consumers in the class who

were yet unaware of the continuing practices.

    For those reasons, the court follows the lead of *Le* and finds that Plaintiff has

alleged all that is required under Article III for the purpose of bringing a claim for

injunctive relief.

### 2.  *Other State Consumer Fraud Acts Claims*

    Defendant also alleges that Plaintiff lacks standing to bring claims under the

consumer fraud laws of states where he did not purchase the spread, i.e., in Arkansas,

Iowa, Utah, West Virginia, Idaho, Alaska, and Montana, because he did not suffer any

injury in fact in those states.

    But although Defendant argues that Plaintiff lacks "standing" to raise claims

under the seven state consumer protection laws other than Illinois' (the ICFA), "[t]his

challenge is more accurately characterized as an attack not on [Plaintiff's] Article III

standing *per se* … but rather on his ability under Rule 23 to represent the multi-state

class." *Halperin v. International Web Services, LLC*, 123 F.Supp.3d 999, 1009 (N.D. Ill.

2015) (citing *McLaughlin on Class Actions* § 4:28 & n.24 (11th ed. 2014) (collecting cases

for the proposition that "most courts have rejected standing challenges to named

plaintiffs who plainly have standing as to their personal claims, but also purport to

represent a class, for example, with claims under the consumer protection laws of states in which the named plaintiffs do not reside").

Here, the Complaint asserts a claim of "Violation of State Consumer Fraud Acts (On Behalf of the Consumer Fraud Multi-State Class)" and, in support thereof, alleges that "[t]he Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff" and "[t]he members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff."  Therefore,

> The Complaint makes clear that the so-called "sister state" consumer protection laws are only implicated by members of the putative class.  Hence, the fact that the named Plaintiff[] may not have individual standing to allege violations of consumer protection laws in states other than th[at] in which [he] purchased Defendant['s] [product] is immaterial.  The issue Defendant[] raise[s] is one of predominance—whether "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. Rule 23(b)(3)….  This is an issue to be resolved at the class certification stage of the litigation.

*Ramirez v. STi Prepaid LLC*, 644 F.Supp.2d 496, 505 (D.N.J. 2009); see also *Halperin*, 123 F.Supp.3d at 1009 ("[T]hat question is best deferred to the class certification stage.")

Therefore, Defendant's Motion to Dismiss due to lack of Article III standing is DENIED, both as it relates to injunctive relief and to claims brought under the consumer fraud acts of states other than Illinois

9

B. Dismissal Under 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In assessing a motion to dismiss, the court must draw all reasonable inferences in favor of the plaintiff but need not accept as true any legal assertions, threadbare recitals of the elements of a cause of action, or conclusory statements.  See *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014); *Iqbal*, 556 U.S. at 678.

1. *ICFA Claim*

To state a claim under the ICFA, Plaintiff must plausibly allege: (1) a deceptive act or practice by Defendant; (2) Defendant's intention that Plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; (4) actual damage to Plaintiff; and (5) the damage to Plaintiff was proximately caused by Defendant's deception.  *Newman v. Metropolitan Life Insurance Co*, 885 F.3d 992, 1000 (7th Cir. 2018).

At issue here is whether Defendant engaged in a deceptive practice.  Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive," *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001), i.e., when a plaintiff shows "a probability that a significant portion of the general consuming public

10

or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020) (internal quotations omitted); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (a statement is deceptive if it is either "literally false" or is "likely to mislead … a reasonable consumer").

And whether a statement is deceptive must be considered "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

Applying this standard, Plaintiff has not pled a deceptive act or practice by Defendant.

First, none of the information on the spread's container is "literally false." Plaintiff alleges that the representation "Made with Olive Oil" is a misrepresentation constituting a deceptive act or practice. But it is undisputed, based on Plaintiff's own pleadings (which include the spread's ingredient list), that the product in question was in fact made with olive oil. *See, e.g., Floyd v. Pepperidge Farm, Inc.*, 581 F.Supp.3d 1101, 1109 (S.D. Ill. 2022) ("The crackers … contained butter; therefore, the use of the word 'butter' is descriptive and not false, misleading or fraudulent."); *Jackson v. Kraft Heinz Foods Co.*, 2022 WL 4591749, at *4 (N.D. Ill. Aug. 3, 2022) ("[T]he Product contains, as its label suggests, mozzarella and tomato sauce and is in fact 'made with "REAL" cheese'" and "there is no implication beyond what the unambiguous description of the product of the Product on the label actually says—that the Product contains mini bagels with mozzarella cheese (which is REAL cheese) and tomato sauce." (cleaned up)); *Ceretti v.*

11

*Whole Foods Market Group, Inc.*, 2022 WL 1062793, at *3 (N.D. Ill. Apr. 8, 2022) ("Whole Foods called its product 'chocolate' and showed the dessert amidst chunks of chocolate. As plaintiff acknowledged, the product actually contained chocolate.  Whole Foods never advertised its product as exclusively or 100% chocolate." (internal citations omitted)).

Second, the use of "Made with Olive Oil" on the spread's container was not likely to mislead a reasonable consumer.  A reasonable consumer would not take that representation to mean that the product necessarily contains a particular amount of olive oil, or more olive oil than other vegetable oils.  See *Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) ("Several district courts have held that references to ingredients used do not imply that ingredient is used exclusively." (collecting cases)).

Moreover, Plaintiff plainly alleges in the Complaint that the spread's container indicated on the front, adjacent to the "Made with Olive Oil" representation, that it was made with "78% Vegetables Oils[.]"  And Plaintiff defines vegetable oil in paragraph 6 of the Complaint as "traditionally refer[ring] to oils such as corn oil, canola oil, cottonseed oil, palm oil, safflower oil, sesame oil, soybean oil and sunflower oil" while referring to olive oil in paragraph 19 as an "alternative oil."  Plaintiff's own allegations concede that consumers knew that the spread was made of 78% vegetable oil. Therefore, Plaintiff cannot plausibly allege that a reasonable consumer would be likely to be misled because the spread contains more palm fruit, canola, and safflower oil (i.e., traditional vegetable oils) than it does extra virgin olive oil.

Because the Complaint fails to plausibly allege a deceptive act or practice by Defendant, the ICFA claim must be dismissed for failure to state a claim.

### 2. *Other State Consumer Fraud Acts Claims*

As discussed above, in relation to standing, the Complaint "reserves the right" of members of the class to assert consumer protection claims under state consumer protection statutes that are similar to the ICFA.

Without more specific allegations at this time, and only a general reservation of the right to raise claims similar to those in the ICFA, this claim must fall with the ICFA claim and is therefore dismissed for the same reasons.

### 3. *Express Warranty, Implied Warranty, and MMWA Claims*

Under Illinois law, a description of goods can create an express warranty: "Any description of the good which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." 810 Ill. Comp. Stat. 5/2-313. An express warranty arises where (1) a defendant makes an affirmation of fact or promise (2) that relates to the goods and (3) becomes part of the basis of the bargain between the parties. See *Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34, 41 (7th Cir. 1980).

To adequately plead a breach of express warranty, a plaintiff must allege (1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages.

13

See *Ibarrola v. Kind LLC*, 2015 WL 1188498, at *5 (N.D. Ill. Mar. 12, 2015) (citing *Hasek v. DaimlerChrysler Corp.*, 745 N.E. 627, 638 (Ill. App. Ct. 2001)).

Likewise, under Illinois law, a warranty that "goods shall be merchantable is implied in a contract for their sale," in which merchantability includes the requirement that goods "conform to the promises or affirmations of fact made on the container or label[.]" 810 Ill. Comp. Stat. 5/2-314. Further, where a seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is … an implied warranty that the goods shall be fit for such purpose." 810 Ill. Comp. Stat 5/2-315.

To adequately plead a breach of implied warranty of merchantability, a complaint must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result; and (3) the plaintiff gave the defendant notice of the defect. See *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F.Supp.3d 718, 725-26 (N.D. Ill. 2021). To state a claim for breach of implied warranty of fitness for a particular purpose, a complaint must allege that (1) the defendant had reason to know of the particular purpose for which the plaintiff required the goods; (2) the plaintiff relied on the defendant's skill and judgment to select suitable goods; and (3) the defendant knew of the plaintiff's reliance on its skill and judgment. See *Solvay*, 521 F.Supp.3d at 727.

The MMWA provides a federal private right of action by "allow[ing] consumers to enforce written and implied warranties in federal court, borrowing state law causes of action." *Schimmer v. Jaguar Cars*, 384 F.3d 402, 405 (7th Cir. 2004). Therefore, it does

14

not create new warranties but rather confers federal jurisdiction for state law breach of

warranty claims. *Floyd*, 581 F.Supp.3d at 1111 (citing *Gardynski-Leschuck v. Ford Motor*

*Co.*, 142 F.3d 955, 956 (7th Cir. 1998)).

In his claim for breach of express and implied warranties and the MMWA,

Plaintiff relies on the following allegations:

> 88.    The Product was manufactured, identified, marketed and sold by
> Defendant and expressly and impliedly warranted to Plaintiff and class members
> that it was made with a non-de minimis and/or predominant amount of olive
> oil, as opposed to containing mainly palm and canola oil.
>
> …
>
> 93.    Defendant described the Product so Plaintiff and consumers believed it
> was made with a non-de minimis and/or predominant amount of olive oil, as
> opposed to containing mainly palm and canola oil, which became part of the
> basis of the bargain that it would conform to its affirmations and promises.
>
> …
>
> 101.    The Product … did not conform to the promises or affirmations of fact
> made on the packaging, container or label, because it was marketed as if it was
> made with a non-de minimis and/or predominant amount of olive oil, as
> opposed to containing mainly palm and canola oil.

But the court has already held that the use of "Made with Olive Oil" on the

spread's container did not constitute a representation that the product necessarily

contains a particular amount of olive oil, or more olive oil than other vegetable oils.

Therefore, Plaintiff's claims for breach of express and implied warranties and the

MMWA must also be dismissed for failure to state a claim.

4.  *Negligent Misrepresentation*

The elements of a negligent misrepresentation claim are:

(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.

*Garner v. Johnson & Johnson*, 2017 WL 6945335, at *4 (C.D. Ill. Sept. 6, 2017) (citing *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 843 N.E.2d 327, 334-35 (Ill. 2006)).

Again, the court has already held that the representations contained on the front of the spread's packaging did not constitute false statements of material fact.  Therefore, Plaintiff's negligent misrepresentation claim must likewise be dismissed for failure to state a claim.

5.  *Fraud*

Heightened pleading requirements apply to complaints alleging fraud, as Federal Rule of Civil Procedure 9(b) provides that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake[.]"

Here, Plaintiff's fraud claim alleges that "Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and canola oil."

Yet again, the court has already held that the representations on the spread's packaging did not plausibly suggest to Plaintiff or to other consumers that the spread was made with a "non de-minimis and/or predominant amount of olive oil" as

16

compared to other vegetable oils.  Therefore, Plaintiff's fraud claim must be dismissed for failure to state a claim.

### 6. *Unjust Enrichment*

Finally, the Complaint asserts a claim of unjust enrichment in a single paragraph that alleges "Defendant obtained benefits and monies because the Product was not as represented and expected…."  Again, the court has already found that this allegation is not plausible.

"Illinois precedent indicates that Illinois courts have held that conduct rises to the level of *wrongful*, in the context of an unjust enrichment claim, when it violates the law."  *Association Benefit Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (emphasis in original).  Because the court has already concluded that Plaintiff has failed to allege any violations of the law in the instant Complaint, Plaintiff's claim of unjust enrichment must also be dismissed.

### 5. *Conclusion*

Therefore, for the foregoing reasons, Plaintiff's Complaint is dismissed in full under 12(b)(6), for failure to state a claim.

The Complaint is dismissed without prejudice to Plaintiff filing an amended complaint.  See *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [their] complaint before the entire action is dismissed.").

Plaintiff is granted 21 days in which to file an amended complaint.  If he does not do so, the dismissal will convert automatically to a dismissal with prejudice and judgment will enter.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Dismiss (#16) is GRANTED in part and DENIED in part.  The Motion to Dismiss is denied as it relates to alleged lack of subject matter jurisdiction (Article III standing) under 12(b)(1), but is granted in full due to failure to state a claim upon which relief can be granted pursuant to 12(b)(6).

(2) The Amended Complaint (#8) is DISMISSED, without prejudice.  Plaintiff is granted 21 days in which to file a second amended complaint.  If he does not do so, the dismissal will convert automatically to a dismissal with prejudice and judgment will enter.

(3) This matter is referred to the Magistrate Judge for further proceedings consistent with this order.

ENTERED this 29th day of March, 2023.

s/Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE

18